# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **WILLIAM R. COUCH, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 7:18CV00049 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **HAROLD CLARKE, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*William R. Couch and Scott M. Boger, Pro Se Plaintiffs; Laura Maughan, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants.*

The plaintiffs, William R. Couch and Scott M. Boger, proceeding pro se, have sued several Virginia Department of Corrections ("VDOC") administrators and officials under 42 U.S.C. § 1983 for violation of the First and Fourteenth Amendments. After review of the record, I conclude that the defendants' Motion for Summary Judgment must be granted.

## I. BACKGROUND.

At all times related to the claims in this lawsuit, Couch has been incarcerated in the Augusta Correctional Center ("Augusta"). His co-plaintiff, Scott M. Boger, is now a resident of Vinton, Virginia. According to the plaintiffs,

> [t]he primary purpose of [their] relationship is to pursue legal remedies and petition for the redress of grievances where Couch

conducts legal research for Boger to assist him in filing actions in court to vindicate Boger's legal rights, and where Boger conducts investigations outside the prison to enable Couch to vindicate his legal rights. Additionally, Boger conducts for Couch most of Couch's financial and business activities outside of the prison.

Compl. ¶ 33, ECF No. 1. The defendants are VDOC Director Harold Clarke, VDOC Chief of Correctional Operations A. David Robinson, Augusta Warden John Woodson, and Augusta Operations Manager Lynn Graham.

The events on which the plaintiffs base their claims are undisputed. In March 2017, Augusta officials distributed a Memorandum from Warden Woodson about revisions to the VDOC's Operating Procedure ("OP") 803.1, among other things. The Memorandum began:

> Over the past year, facility staff has discovered a substantial amount of contraband entering DOC facilities through the facility visiting room and the facility mailroom. A significant portion of this contraband has been drugs. Due to the increasing amount of contraband entering our facilities and in order to ensure a high level of safety and security for all Department of Corrections (DOC) staff, visitors and offenders, it is essential that the Department implement additional security measures aimed at detecting and eliminating contraband in all DOC facilities. Therefore in response to this growing issue, the following changes will be implemented.

Compl. Ex. A, ECF No. 1-1. The Memorandum, dated March 13, 2017, then described changes to policies concerning visitation security and inmates' incoming correspondence, to take effect on April 22, 2017.

Before these changes, OP 803.1 permitted offenders to receive incoming general correspondence via the mail if it was processed by the United States Postal

Service as weighing one ounce or less — the equivalent of a First Class Mail item. Thus, an inmate could receive mailed envelopes each containing up to five sheets of typical-weight copy paper or one sheet of paper and six photographs. Per policy, officers opened and inspected each piece of mail for contraband. If a mailing passed inspection, officers delivered all of the mail items to the inmate.[1]

The revised edition of OP 803.1 implemented the following changes, as described in the warden's Memorandum:

1. **All Security Level 2 and above Institutions.** All incoming offender general correspondence to include the envelope at Security Level 2 and above Institutions will [be] photocopied in the institutional mailroom and a maximum of three black and white photocopied pages front and back will be provided to the offender.

    • The original envelope, letter and all enclosed contents will be shredded in the institutional mailroom. Exceptions to this requirement include but are not limited to official legal, government and court ordered documents such as military records (i.e. DD214), Court documents (i.e. divorce decrees, name change orders), etc. Before any action is taken on these documents, facility management staff must be consulted. Personal Identification Documents will continue to be forwarded to the facility Records Office for processing.

    • Offenders will be limited to receiving a maximum of three, 8 ½ X 11, black and white photocopied pages front and back to include the photocopy of the envelope. Each item in the envelope i.e., photograph, newspaper

---

[1] These page-limit and weight restrictions did not apply to legal mail, special purpose mail, educational correspondence, packages from a vendor, or mail from a federal, state, or local government agency.

> clipping, drawing, each side of a letter, etc. will be considered one photocopy.
>
> • Enclosed items (photographs, greeting cards, newspaper articles, etc.) will not be manipulated to print multiple items on a single photocopied page. Items that exceed the established size limitation will not be manipulated to fit on a single or multiple 8 ½ X 11 photocopy pages.
>
> • The entire correspondence and all enclosed items that exceed the established photocopy or size limit will be returned to the sender with the *Notice of Unauthorized Correspondence* 803_F2 advising the sender of the reason for the return.
>
> 2. Individuals will still be permitted to send offenders secure messages, photographs, and other attachments through the JPay system as is currently authorized. Additionally, offender pictures during visitation will still be permitted in accordance with Operating Procedure 801.6, *Offender Services*[.]
>
> 3. Incoming legal correspondence and special purpose correspondence will be processed in accordance with the current procedural requirements as provided in Operating Procedure 803.1, *Offender Correspondence.*

*Id.*, ECF No. 1-1.

On April 25, 2017, the Augusta mail room staff received incoming correspondence from Boger to Couch. The mailing consisted of one sheet of paper with writing on one side and one 4 X 6 color photograph.[2] Under the revised mail

---

[2] The letter, with Boger's address block at the top like letterhead, and addressed to Couch, stated:

Muhammad,

policy, a staff member made a black-and-white photocopy of the letter, the photograph, and the envelope; destroyed the original documents, including the photograph; and delivered the photocopies to Couch.

On May 5, 2017, the mailroom staff processed incoming correspondence from Boger to Couch, consisting of three, 8 ½ X 11 sheets of paper with healthcare information printed on both sides of each sheet. The new mail policy limits inmates to receiving three photocopied pages, front and back. Because a photocopy of the envelope would have exceeded that three-sheet limit, the mailroom staff returned the mailing to Boger with that explanation.

On May 18, 2017, the mailroom processed incoming correspondence from Boger to Couch consisting of two, 8 ½ X 11 sheets of paper with writing on both sides of each sheet, and two 4 X 6 photographs. Staff returned this mailing to Boger because it exceeded the three-sheet limit.

Couch exhausted administrative remedies as to each of these three mailings. He complained that he could not receive the original photograph from the April mailing and that the other two mailings were returned, causing additional costs to

---

Greetings! I'm hoping this photo of Donna and I will brighten your day. It's a picture from a few years ago when we took some kids to King's Dominion. Look at the colors of that log plume with that handsome fellow in the back. The browns make that log look almost real. Anyway, it's the only photo I have from that day and it's one of a kind because it came directly from King's Dominion and I can't replace or reproduce it. Please keep it safe.

Compl. Ex. C, ECF No. 1-1.

the sender, when compared to the prior policy, to resend the materials in two mailings. Boger also filed an appeal about the additional mailing costs required by the new policy. The warden responded that a challenge to a VDOC policy should be addressed to VDOC administrators. Boger then appealed to VDOC Director Clarke, who never responded to his concerns.

On these facts, the plaintiffs allege the following § 1983 claims for relief:

1. "Couch was denied Due Process when Defendants denied to him any meaningful opportunity to protest Defendants' destruction of Couch's photograph," and "Defendants' mail policy is per se unconstitutional where the policy codifies the deprivation and destruction of Couch's property absent due process."

2. "Boger was denied due process when defendants denied to him any meaningful opportunity to protest rejected correspondence," and "Defendants' restrictions on, and rejections of, Plaintiffs' correspondence violate Plaintiffs' First Amendment right to free speech and Fourteenth Amendment right to due process."

3. "Defendants Infringed Boger's First and Fourteenth Amendment Rights When Defendants Rejected/Returned His Correspondence," and "Defendants' restrictions on, and rejections of, Plaintiffs' correspondence violate Plaintiffs' First Amendment right to free speech and Fourteenth Amendment right to due process."

4. "Defendants Infringed Couch's First And Fourteenth Amendment Rights When Defendants Rejected/Returned His Correspondence Rather Than Photocopy Two Photographs Onto One Side Of A Sheet Of Paper," and "Defendants' restrictions on, and rejections of, Plaintiffs' correspondence violate Plaintiffs' First Amendment right to free speech and Fourteenth Amendment right to due process."

Compl. 13-16, ECF No. 1. On these claims, the plaintiffs seek declaratory relief; a permanent injunction directing the defendants to permit the plaintiffs to "receive or send one-ounce, first-class correspondence at established U.S. postal rates" and to be afforded "meaningful pre-deprivation and/or post-deprivation remedies" before any photographs are destroyed; and punitive damages. *Id.* at 32-33.

The defendants have filed a Motion for Summary Judgment. The plaintiffs have responded to that motion, making it ripe for disposition.[3]

II. DISCUSSION.

A. The Summary Judgment Standard.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In short, a motion for summary judgment should be granted when the

---

[3] The plaintiffs served interrogatories even before the defendants had filed their dispositive motion. The defendants responded with a Motion to Stay Discovery, directing that they need not respond to the interrogatories until the court had addressed the threshold issues of whether the complaint stated actionable § 1983 claims and whether the defendants were entitled to qualified immunity. The plaintiffs objected to the motion, arguing that the interrogatories were relevant to their claims. After review of the record, however, I conclude that the protective order was appropriately granted. Moreover, I am satisfied that answers to the interrogatories could have no impact on the reasons for my conclusion that the defendants are entitled to summary judgment as a matter of law.

proof, taken in the form admissible at trial and resolving all factual doubts in favor of the non-moving party, would lead a reasonable juror to but one conclusion. *Id.* at 247-52. I must "view the facts and draw reasonable inferences in a light most favorable" to the plaintiffs, as the nonmoving parties. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).[4]

### B. The First Amendment Claims.

Inmates have a First Amendment right to receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). The scope of their right is subject to limitations that prison officials deem necessary to further legitimate penological interests, such as security and rehabilitation of inmates. *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). It is well established that even if a prison regulation "impinges on inmates' constitutional rights," it is permissible as long as the regulation is "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 409-10 n.9 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Under *Turner*, courts must consider: (1) whether there is a "valid, rational connection" between the prison regulation or action and the legitimate and neutral interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational;" (2) whether "alternative means of exercising the right . . . remain open to prison inmates;" (3) what impact the desired accommodation would have

---

[4] I have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action. *Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006) (quoting *Turner*, 482 U.S. at 89-92).

In applying this standard, it is "important to inquire whether prison regulations restricting inmates' First Amendment rights operate[] in a neutral fashion, without regard to the content of the expression." *Turner*, 482 U.S. at 89-90. A regulation is valid "if it is reasonably related to legitimate penological interests." *Id.* at 89. The standard does not subject the "judgments of prison officials to an inflexible strict scrutiny analysis," nor does it involve inquiry into the least restrictive means. *Id.* Courts must allow prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Such matters "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment." *Id.* at 548.

Two courts have recently rejected VDOC inmates' First Amendment and Due Process challenges to the new incoming correspondence policy. *See Bratcher*

*v. Clarke*, No. 1:17CV474 (AJT/MSN), 2018 WL 4658684 (E.D. Va. Sept. 26, 2018); *Strebe v. Kanode*, No. 7:17CV00321, 2018 WL 4473117 (W.D. Va. Sept. 18, 2018), *reconsideration denied*, No. 7:17CV00321, 2018 WL 6075796 (W.D. Va. Nov. 21, 2018). On the well-developed record in the *Bratcher* case, the court held that under the four *Turner* factors, the VDOC's revised "mail policy clearly is related to legitimate penological interests." 2018 WL 4658684 at *18. After making detailed factual findings, the court denied the plaintiff's demand for preliminary injunctive relief and also granted summary judgment for the defendant. Based on that court's findings, bolstered by the findings in *Strebe*, 2018 WL 4473117, I conclude that the defendants in this case are entitled to summary judgment on the plaintiffs' claims that the policy violates their First Amendment rights.

Specifically, the *Bratcher* court found that prison officials' evidence established "that the policy is logically connected to the legitimate government interests of keeping offenders safe and running a secure prison system." 2018 WL 4658684, at *18 (citing *Bell*, 441 U.S. at 546-47 (holding that institutional security and internal order are "essential goals" of correctional facilities)).

> The mail policy was developed and adopted specifically to curb the influx of drugs into Virginia institutions through the mail system. By requiring inmates' incoming general correspondence to be photocopied, the risk of smuggling drugs into institutions in the original pieces of mail is significantly reduced, as is demonstrated by the marked decrease in drug-related prisoner deaths and drug

overdoses VDOC experienced after the policy was implemented in early 2017. The mail policy thus is reasonably related to the legitimate penological interest of prohibiting contraband from entering Virginia prisons.

*Id.*; s*ee also Lee v. Md. Div. of Corr.*, 2017 WL 713760 (D. Md. Feb. 22, 2017) (upholding policy prohibiting greeting cards from entering correctional facilities because they were frequently used to smuggle Suboxone film into prisons). The *Bratcher* court also noted that "VDOC did not act rashly in response to this problem; rather, officials deliberated for many months and ultimately decided to update its correspondence and visitation policies." 2018 WL 4658684, at *8. Importantly, too, "[t]he policy is content-neutral, and does not deprive prisoners of the contents of any letters. Indeed, the prisoners receive a photocopy of all correspondence that is accepted by a prison mailroom." *Id.* Finding no material factual dispute to the contrary, the *Bratcher* court ruled that the first *Turner* factor weighed in favor of prison officials. *Id.* at *18.

The court also found that the record favored prison officials as to the other *Turner* factors. Under the new policy, inmates receive and can retain complete photocopies of the full content of their incoming mail so long as it does not exceed the three-sheet photocopy limit. They also retain alternative means to obtain and possess original photographs — through use of a JPay device, through the VDOC's visitation photograph service, or by having photographs of friends or family prepared by an approved vendor and mailed from the vendor to the inmate. *Id.* at

*9. While acknowledging "the sentimental importance of personalized letters and pictures" and the increased costs of some of the now-available options open to inmates, the *Bratcher* court emphasized that the constitutional standard requires only "available," alternative means of practicing First Amendment rights; those means "need not be ideal." *Id.* at *10. Moreover, the court recognized the need to be particularly deferential to prison administrators' "informed discretion" in formulating prison administration and security policies that affect multiple correctional institutions, as is the case here. *Id.* at *19. Thus, prison officials suceed on the second *Turner* factor. *Id.*

The new mail procedures require additional staffing and expenses to photocopy all incoming general correspondence and to return mail that does not meet the three-sheet limit. *Id.* at *11. VDOC administrators concluded, based on statistical evidence, however, that "VDOC incurs far more substantial costs as a result of inmate drug overdoses"— such as expending money and resources for transportation to medical intervention, medical treatment, and investigations — than it would save by returning to the former mail policy. *Id.* Moreover, since the new mail policy took effect, "VDOC has seen a marked decrease in all manner of drug-related incidents in VDOC facilities." *Id.* The *Bratcher* court found itself bound to give deference to prison officials' professional judgment in reaching this

costs-benefits determination and credited the third *Turner* factor to the defendants.[5] *Id.* at *19.

Finally, the *Bratcher* court found the plaintiff's evidence of ready alternatives to the new policy insufficient to achieve the same penological goals. *Id.* at *12. The plaintiff proffered, as easy alternatives, more efficient searches and testing for drug contraband, applying the new restrictions only to inmates with past infractions for drugs, or storing or returning to the sender any original mail rejected under the new policy, instead of destroying items after photocopying them. *Id.* The court found from the record that these alternatives would not as efficiently further VDOC's goals and would divert additional resources. *Id.* Thus, the court held that the fourth *Turner* factor also weighed in favor of prison officials. *Id.* at *19. *See also Strebe*, 2018 WL 4473117, at *7 ("Plainly, after considering the four *Turner* factors, the revised VDOC mail policy passes constitutional muster.").

I conclude that the factual and legal findings in *Bratcher* and *Strebe* are persuasive and that they foreclose the plaintiffs' First Amendment claims in this

---

[5] The plaintiffs here complain that the defendants have not offered specific statistics about the number of drug overdoses, when they occurred, or how the drugs entered the prison; that they have not demonstrated how drugs can be smuggled on a photograph; and that their failure to apply the no-original-mail rule only to higher security prison facilities undermines the legitimacy of the penological interest it furthers. It is undisputed in this case that prison officials have devoted months of extensive investigation and consideration to the complex problem of preventing drugs, so far as possible, from entering VDOC facilities. I conclude that I am bound to defer to these officials' professional judgment here, as did the *Bratcher* court.

case.[6] Finding no material disputed fact on which the plaintiffs could prove otherwise, I will grant the defendants' Motion for Summary Judgment as to the First Amendment claims.

## C. The Due Process Claims.

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Inmates retain a liberty interest in corresponding with non-incarcerated individuals "in uncensored communication by letter." *Procunier v. Martinez*, 416 U.S. 396, 418 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. 401. While that right is grounded in the First Amendment, it is "qualified of necessity by the circumstance of imprisonment." *Id.* Thus, "the decision to censor or withhold delivery of a particular letter" so that the inmate recipient is prevented from corresponding with the sender "must be accompanied by minimum

---

[6] The plaintiffs in this case complain that the alternative means for inmates to receive photographs are unreliable or prohibitively expensive; that the three-sheets/six-page photocopy limit and the refusal to copy more than one item per page are unreasonable; and that Augusta has the equipment to make color photocopies of photographs for inmates. Their arguments against the current version of the VDOC's inmate correspondence policy do not undermine my conclusion that the policy survives their First Amendment challenge.

procedural safeguards." *Id.* at 417. In such circumstances, prison officials must provide limited procedural protections by: (1) notifying the inmate of the rejection of a letter, (2) allowing the author of the letter "a reasonable opportunity to protest that decision," and (3) referring any complaints to a prison official other than the person who made the censorship decision. *Id.* at 418-19. These procedural safeguards apply only when a prison official decides "to *censor* or *withhold delivery* of a particular letter" to the extent that the inmate's protected right to correspond is impacted. *Id.* at 417 (emphasis added). If a challenged policy does not infringe on a protected liberty interest, the court need not reach the question of what process is due. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Because the new incoming mail policy does not interfere with the liberty interest Boger and Couch have in corresponding with each other, it is not subject to the procedural protections in *Procunier*. Couch receives all of the content of Boger's mailings that comply with the three-sheet limitation. Nothing is censored, and the photocopies do not hamper Couch's ability to interpret and respond to those mailings. Moreover, when a mailing exceeds the three-sheet limit, the policy mirrors *Procunier* procedures by notifying the inmate and returning the mailing to the sender. For these reasons, the *Bratcher* court held that the VDOC mail policy does not violate inmates' Fourteenth Amendment procedural due process rights. 2018 WL 4658684, at *15. I will adopt its holding and grant summary judgment

for the defendants as to the plaintiffs' Fourteenth Amendment claims alleging deprivations of their protected liberty interests without due process.

The plaintiffs also complain that the new policy deprived Couch of a property interest in the photograph that Boger mailed to him. "[C]ourts must look to state law to determine whether a particular claim of right is sufficient to constitute a property interest for purposes of the Due Process Clause." *Id*. at *16; *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) ("The hallmark of property . . . is an individual entitlement grounded in state law. . . ."). Without a constitutionally recognized property interest, a prisoner cannot assert a due process violation. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Inmates' protected property interest in their incoming mail does not extend to items designated by prison policy as contraband, however. *Bratcher*, 2018 WL 4658684 at *16 (citing *Parratt v. Taylor*, 451 U.S. 527, 529-31 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)).

VDOC's OP 802.1(III) defines contraband as follows:

> Contraband - An item forbidden for entry, possession, or removal from a Department of Corrections facility. An item in the possession of, or accessible to, an offender that has not been specifically issued to, or authorized for possession by the offender; or has not been obtained by the offender in accordance with operating procedures.

*Bratcher*, 2018 WL 4658684, at *16. "Because all original incoming mail received by inmates after April 17, 2017 is contraband, it is subject to confiscation under

VDOC regulations, and the inmates maintain no property interest in those items. Thus, confiscation of an inmate's original mail is not subject to the protections of the Due Process Clause." *Id.*

When Boger's letter including the King's Dominion photograph arrived at Augusta addressed to Couch, that original photograph was classified as contraband under VDOC policy, not authorized prisoner property. Therefore, Couch cannot prevail on his claim that the loss of that original photograph deprived him of a protected property interest in violation of the Fourteenth Amendment. I will grant the defendants' motion as to that claim.

### III. CONCLUSION.

For the reasons stated, I conclude that the defendants are entitled to summary judgment and, accordingly, it is **ORDERED** that their motion, ECF No. 16, is GRANTED.

A separate Judgment will be entered herewith.

ENTER: March 29, 2019

/s/ James P. Jones
United States District Judge